Eric H. Spencer (#022707)
Brett W. Johnson (#021527)
Colin P. Ahler (#023879)
Ryan J. Regula (#028037)
Derek C. Flint (#034392)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
Email: espencer@swlaw.com
  bwjohnson@swlaw.com
  cahler@swlaw.com
  rregula@swlaw.com
  dflint@swlaw.com
*Attorneys for Defendant F. Ann Rodriguez*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Pascua Yaqui Tribe,<br><br>          Plaintiff,<br><br>     v.<br><br>F. Ann Rodriguez, in her official capacity as Pima County Recorder,<br><br>          Defendant. | No. CV-20-00432-TUC-JAS<br><br>**Reply in Support of Motion to Dismiss**<br><br>Assigned to: Hon. James A. Soto |

**Introduction**

Plaintiff's Response fails to cure the myriad defects in the Complaint. Plaintiff (or the "Tribe") does not have standing for its claims. It lacks *parens patriae* standing because, by its own admission, it does not bring this suit on behalf of *all* its members ("Tribal Members"), (*See* Doc. 27 at 6), and the doctrine of *parens patriae* does not grant standing to a sovereign to vindicate individual rights. Nor does the tribe have associational standing, as it has failed to plead facts showing that any individual Tribal Member would have standing or that the alleged interests it seeks to defend are germane to the Tribe's purpose.

Plaintiff (or the "Tribe") also fails to justify its decision to wait until *three weeks* before the November 3, 2020 General Election to ask a court to reinstate an on-reservation early-voting ("OREV") site that was eliminated more than *two years* ago. Plaintiff's argument that its claims extend beyond the 2020 General Election is rendered implausible by the inextricable link between those claims and the COVID-19 pandemic. The *Purcell* doctrine and laches compel this Court to grant the Motion to Dismiss (the "Motion") on this ground alone.

The merits of Plaintiff's claims are not any stronger. Plaintiff has failed to make more than "threadbare recitals of the elements of" its claims under § 2 of the Voting Rights Act and the First and Fourteenth Amendments. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). It has not plead facts sufficient to show a disparate burden under § 2, or an undue burden under the First and Fourteenth Amendments. Accordingly, the Court should grant the Motion and enter judgment in favor of Recorder Rodriguez.

**Argument**

**I. Plaintiff Lacks Standing**

    **A. The Tribe May Not Assert *Parens Patriae* Standing**

Plaintiff contends that tribes may assert *parens patriae* jurisdiction under certain circumstances. (Doc. 27 at 6). But not a single case cited by Plaintiff addressed the issue of *parens patriae* standing and held that a tribe properly exercised it. (*Id.*). Two of those cases did not even address the issue of standing. *See Confederated Tribes of the Chehalis*

*Reservation v. Thurston Cty. Bd. of Equalization*, 724 F.3d 1153 (9th Cir. 2013); *see also Ogala Sioux Tribe v. Fleming*, 904 F.3d 603, 610 (8th Cir. 2018) ("We do not address whether any of the plaintiffs [including the tribe] satisfy the requirements for Article III standing, because the district court should have abstained under *Younger*."). Another Eighth Circuit case, *Santee Sioux Tribe*, undermines Plaintiff's position because it held that a tribe did *not* have standing and reasoned that "[t]he parens patriae doctrine cannot be used to confer standing on the Tribe to assert the rights of a dozen or so members of the Tribe." *United States v. Santee Sioux Tribe of Neb.*, 254 F.3d 728, 734 (8th Cir. 2001). The Tenth Circuit case cited by Plaintiff similarly undermines its argument, as the court there held that the plaintiff-tribes "cannot avail themselves of the *parens patriae* doctrine in order to maintain any § 1983 claims." *Cheyenne v. Arapaho Tribes v. First Bank & Tr. Co.*, 560 Fed. App'x 699, 705 (10th Cir. 2014).

The principle set forth in *Cheyenne*—that a tribe lacks standing to vindicate the rights of individual members—is consistent with the case law cited in the Motion and Ninth Circuit precedent. (Doc. 24 at 5-6) For instance, in *Chemeheuvi Indian Tribe*, the Ninth Circuit has held that a tribe cannot "assert its members' individual rights as *parens patriae* in a § 1983 action." *Chemeheuvi Indian Tribe v. McMahon*, 934 F.3d 1076, 1082 (9th Cir. 2019). The court reasoned that "[t]o assert *parens patriae* standing, the Tribe would have to 'articulate an interest apart from the interests of particular private parties,'" and "express a quasi-sovereign interest," but that "quasi-sovereign interests are *not individual rights*." *Id.* (emphasis added) (quoting *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 651 (9th Cir. 2017)); *see also Inyo Cty., Cal. v. Paiute-Shoshone Indians of the Bishop Cmty. of the Bishop Colony*, 538 U.S. 701, 712 (2003) (holding that tribes "may not sue under § 1983 to vindicate the[ir] sovereign right[s]").

Here, vindicating the "individual rights" of its members is precisely what Plaintiff seeks to do. In particular, Plaintiff seeks to alleviate alleged burdens on certain members' right to vote and to encourage those members to exercise that right. (*See* Doc. 31 at 2) (claiming Tribe has standing to "remedy the harm to its members" and "encourage members

to participate in state and federal elections"). Under *Chemehuevi*, these alleged harms to the Tribe's members do not confer standing on the Tribe itself. And, as described in the Motion, the Tribe does not seek to vindicate the rights of *all* members; it only seeks to vindicate the rights of the minority of its voters who vote early and in-person. This defeats Plaintiff's claim to *parens patriae* standing. *See, e.g.*, *Santee Sioux Tribe of Neb.*, 254 F.3d at 734 (*parens patriae* doctrine "is reserved for actions which are asserted on behalf of *all* of the sovereign's citizens").

Plaintiff's heavy reliance on *Alfred L. Snapp & Son., Inc. v. Puerto Rico ex rel., Barez*, 458 U.S. 592, 609 (1982), is also misplaced. In *Snapp*, Puerto Rico brought suit against a private party alleging *parens patriae* standing because Puerto Rican citizens had been unlawfully denied certain economic benefits based on their status as Puerto Ricans. *Id. Snapp* did *not* involve an attempt by the sovereign to vindicate the individual rights of its citizens, but instead involved a sovereign action to protect the "economic and commercial interests" of its citizens from discrimination in interstate commerce. *See id.* As such, *Snapp* has no applicability to Plaintiff's claims in this case.

Put simply, the Tribe lacks *parens patriae* standing because it does not represent the interests of all its members and its alleged interest in vindicating individual rights is insufficient to confer *parens patriae* standing.

**B. The Tribe Lacks Associational Standing.**

In the alternative, the Tribe claims that it has associational standing. That argument fails for multiple reasons. First, Plaintiff fails to satisfy the first *Hunt* prong because it cannot point to any allegation *in its Complaint* that a single Tribal Member has suffered an "injury-in-fact that is traceable to the defendant and is likely to be redressed by a favorable decision." *Associated Gen. Contractors of Am., San Diego Chapter, Inc. v. Cal. Dept. of Transp.*, 713 F.3d 1187, 1194 (9th Cir. 2013). Rather than pointing to any Complaint paragraph (or paragraphs) on this point, Plaintiffs instead attempts to establish standing by citing declarations attached to its preliminary injunction motion to claim that individual voters have cognizable injuries from the lack of an OREV site. (*See* Doc. 27 at 8). This

3

1  pleading deficiency is fatal to Plaintiff's associational-standing argument. *Lovelace v.*
2  *Equifax Info. Servs., LLC*, No. CV-18-04080-PHX-DWL, 2019 WL 2410800, at *2 (D.
3  Ariz. June 7, 2019) ("Courts regularly decline to consider declarations and exhibits
4  submitted . . . in opposition to a motion to dismiss . . . if they constitute evidence not
5  referenced in the complaint or not a proper subject of judicial notice.") (quoting *Gerritsen*
6  *v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1021 (C.D. Cal. 2015)); *see also Yazzie v.*
7  *Hobbs*, 2020 WL 6072861 (9th Cir. Oct. 15, 2020) ("The failure to plead—much less make
8  a clear showing of—concrete and particularized injury is enough to doom Yazzie's
9  standing.").

10  Even if the Court considers the declarations, those declarations still do not show that
11  any Tribal Member has suffered a cognizable harm under § 2 of the Voting Rights Act or
12  the U.S. Constitution. The factual allegations in the declarations express nothing more than
13  a preference to vote early and an inconvenience by having to travel farther to do so. (*See*
14  Doc. 4-5 at 12) (voter claims "I would like to vote in-person at an early voting location"
15  and that he would "hav[e] to travel two hours roundtrip on a bus" to do so); (Doc. 4-5 at 25)
16  (voter, a disc jockey who works at the previous on-reservation early-voting location, claims
17  "I prefer to vote early, in-person" and that closest early voting location is "too far to walk").
18  But the inconvenience of traveling to cast a ballot is not a cognizable harm under § 2 of the
19  Voting Rights Act. *See, e.g.*, *Lee v. Va. State Bd. of Elections*, 843 F.3d 592, 600 (4th Cir.
20  2016) (§ 2 does not prohibit "any regulation that imposes a disparate inconvenience," and
21  polling places do not "need to be precisely located such that no group ha[s] to spend more
22  time traveling to vote than any other"); *Yazzie v. Hobbs*, 2020 WL 5834757, at *4 (D. Ariz.
23  Sept. 25, 2020), *affirmed on other grounds by Yazzie v. Hobbs*, 2020 WL 6072861 (9th Cir.
24  Oct. 15, 2020) (a showing that an election law is "more inconvenient for Navajo voters than
25  it is for certain voters" does not "constitute a showing of disparate burden" under § 2).

26  Nor is the inconvenience of traveling to an early-voting location a cognizable harm
27  under the First and Fourteenth Amendments. The statute that allows Recorder Rodriguez to
28  establish early-voting locations expands the franchise, making it easier for some voters to

4

cast their ballots. *See* Ariz. Rev. Stat. § 16-542(A). And, as the Fifth Circuit recently held, "a law that makes it *easier* for others to vote does not abridge any person's right to vote" under the Constitution. *Tex. League of United Latin Am. Citizens v. Hughs*, ---F.3d---, 2020 WL 6023310, at *5 (5th Cir. Oct. 12, 2020) (quotations omitted). Therefore, mere voter inconvenience with respect to early voting does not constitute a burden on any individual's constitutional rights. *See id.*

Second, the alleged standing of individual Tribal Members is also defeated by Plaintiff's acknowledgment that COVID-19 is the source of the claimed burden on those members. (Doc. 27 at 9). As a threshold matter, Tribal Members' alleged fear of catching COVID-19 while traveling to the polls does not amount to an injury-in-fact sufficient to confer standing. *See Muns v. Kerry*, 782 F.3d 402, 411 (9th Cir. 2015) (holding that a "fear of speculative future injury" does not constitute injury-in-fact). Moreover, as the Sixth Circuit reasoned in rejecting an undue burden claim based on the interplay between the COVID-19 pandemic and a state election law, an undue burden claim "require[s] state action." *Thompson v. DeWine*, 959 F.3d 804, 810 (6th Cir. 2020); *see also Kishore v. Whitmer*, 972 F.3d 745, 750 (6th Cir. 2020) (plaintiffs' "conscious choice" not to avail themselves of state election law because of COVID-19 is not state action). It follows that courts "cannot hold private citizens' decisions to stay home for their own safety against the State." *Id.* Yet that is exactly what Plaintiff asks the Court to do here, arguing that the absence of an OREV site "in the context of" COVID-19 burdens its rights. *DeWine* expressly contradicts this argument.[1] Because none of the arguments Plaintiff raises to support standing under the first *Hunt* prong hold water, Plaintiff lacks associational standing. *See Hunt v. Wash. State Apple Advert. Comm'n*, 532 U.S. 333, 343 (1977).

Third, even if the Court reaches the second *Hunt* prong, Plaintiff fails there too because it has not established that the "interests it seeks to protect are germane to the organization's purpose." *See id.* Tellingly, Plaintiff does *not* contend that the purpose of the

---

[1] *Miller v. Thurston*, which Plaintiff relies upon to support its undue burden argument, is inapposite because, unlike in this case, the defendant in *Thurston* "d[id] not argue any plaintiff lacks an injury in fact." 967 F.3d 727, 735 (8th Cir. 2020).

5

Pascua Yaqui Tribe is to protect voter rights. (*See* Doc. 27 at 10; Doc. 31 at 3). Instead, Plaintiff merely points to its interest in voting-related activities. On its face, this is insufficient to establish associational standing. *See Schmier v. U.S. Court of Appeals*, 279 F.3d 817, 823 (9th Cir. 2002) (holding that a "mere interest" in an issue "no matter how longstanding the interest and now matter how qualified the organization is in evaluating the problem, is not sufficient by itself to render the organization adversely aggrieved or affected").[2] What's more, *none* of the alleged interests the Plaintiff seeks to protect are germane to a purpose set forth in its Complaint, rendering its pleading on the second *Hunt* prong deficient. *See Lovelace*, 2019 WL 2410800, at *2; (*see* Doc. 27 at 10; Doc. 31 at 3). Thus, Plaintiff lacks associational standing because it cannot establish two of the three required elements under *Hunt*.

### II. Plaintiff's Claims Are Barred by the *Purcell* Doctrine.[3]

Plaintiff claims that *Purcell* does not bar courts from issuing injunctions near an election, no matter how devastating the impact on election administration, so long as the injunction does not "alter[] existing election laws or rules." (Doc. 27 at 11). But this reading of *Purcell* flies in the face of Ninth Circuit precedent.

As the Ninth Circuit recently explained, *Purcell* operates to prevent district courts from issuing injunctions that send states "scrambling to implement and administer" them "on the eve of an election." *Ariz. Democratic Party v. Hobbs*, ---F.3d---, 2020 WL 5903488, at *2 (9th Cir. Oct. 6, 2020). The Ninth Circuit reiterated the point three days ago in *Yazzie*, noting that the *Purcell* doctrine factored into its decision to dismiss the case, which undermines Plaintiff's argument that *Purcell* cannot be a ground for dismissal. *Yazzie v.*

---

[2] To the extent Plaintiff claims organizational standing, that argument fails because Plaintiff did not allege in the Complaint that it any of Recorder Rodriguez's actions cause it to divert resources or frustrated its mission. *See La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010) (plaintiff must plead both a "diversion of resources and a frustration of its mission" to establish organizational standing).

[3] The arguments in Plaintiff's Reply, (Doc. 27), concerning *Purcell* and laches but address facts and issues outside the Complaint are irrelevant to the disposition of this Motion and are therefore not addressed in this Reply. *See Lovelace*, 2019 WL 2410800, at *2.

6

*Hobbs*, 2020 WL 6072861, at *4 (holding that "[d]ismissal of this last-minute challenge to a decades-old rule should be fair notice to plaintiffs" that bring election lawsuits on the eve of the election) (Doc. 31 at 4). Plaintiff—which brought its claims well after the plaintiffs in *Arizona Democratic Party* and *Yazzie*—conveniently ignores both cases in its briefs, despite the fact that they were cited in the Motion. Plaintiff similarly ignores *McCrory* (also cited in the Motion), which applied *Purcell* in the context of changes to early-voting plans because the changes "would create logistical difficulties" including "the need to coordinate properly trained staff, computer system setup, and site management." *N.C. State Conference of the NAACP v. McCrory*, 214 F. Supp. 3d 466, 472 (M.D.N.C. 2016).

Applying these cases here warrants dismissal. Despite having knowledge of the basis for its claims (removal of the OREV site) in 2018, Plaintiff did not file this lawsuit until three weeks before the election. (*See* Doc. 1 at 2). As in *Arizona Democratic Party*, Plaintiff's requested relief would undoubtedly send Recorder Rodriguez "scrambling" at the eleventh hour to establish a new early-voting site with early voting already underway across Pima County. *See* Ariz. Rev. Stat. § 16-542(C) (early voting begins 27 days before the election). Similar to *McCrory*, the "logistical difficulties" for Recorder Rodriguez would include, among other things, "the need to coordinate properly trained staff, computer system setup, and site management." *See* 214 F. Supp. 3d at 472. Thus, the *Purcell* doctrine requires dismissal of Plaintiff's late-brought claims.[4]

Plaintiff fails to cite any authority to support its proposition that the *Purcell* doctrine does not apply to last-minute changes to election plans or the placement of polling locations. The main case on which Plaintiff relies—*Democracy North Carolina v. North Carolina State Board of Elections*—did not invoke *Purcell* because the relevant set of voting rules was not yet finalized. *See* 2020 WL 4484063, at *63. This is not the case here, where Pima

---

[4] Plaintiff's argument that its claims should not be dismissed under *Purcell* because it will continue to pursue this litigation after the November 3, 2020 General Election is a red-herring; the factual underpinning of this lawsuit is inextricably linked to the impact of the COVID-19 pandemic on the 2020 election cycle. (*See, e.g.*, Doc. 1 at ¶¶ 4, 7, 25, 27, 34, 39, 40, 57, 61-62, 98) (discussing connection between alleged burdens on voting and COVID-19).

1  County's list of early-voting sites was finalized *six months ago*. *See* Ex. A, Pima County Board of Supervisors, Resolution No. 2020-28 (Apr. 21, 2020).[5] Moreover, the plaintiffs in *Democracy North Carolina* brought their claims more than 4 *months* before the election, 2020 WL 4484063, at *3, whereas Plaintiff brought its claims three *weeks* before the election. Therefore, *Democracy North Carolina* is highly distinguishable.

*Hill v. Williams* is similarly distinguishable. In that case, the plaintiffs sought to enjoin state officials from enforcing a statute that prohibited voters from taking photos of their completed ballots. 2016 WL 8667798, at *2 (D. Colo. Nov. 4, 2016). The plaintiffs made clear that their requested relief would not change any election laws, procedures, or operations. *Id.* at *7-8. If anything, the requested relief actually *preserved* state resources by forbidding prosecutions. By contrast, Plaintiffs' requested relief would place an immense burden on Recorder Rodriguez by requiring her to establish a new early-voting site when early voting is already underway.

In addition, *Blackfeet Nation v. Corey Stapleton* and *Jacksonville Coalition for Voter Protection v. Hood* have no relevance here. *Hood* was decided two years before *Purcell* and thus could not have applied the *Purcell* doctrine. *See generally Jacksonville Coalition for Voter Prot. v. Hood*, 351 F. Supp. 2d 1326 (M.D. Fla. 2004). And Plaintiff did not even cite a written order in *Blackfeet Nation v. Corey Stapleton*; instead, it merely cited to the docket for the irrelevant proposition that *Purcell* does not apply to election-related settlement agreements. (Doc. 27 at 11). If anything, Plaintiffs need to rely on these two cases lays bare the weakness of its *Purcell* argument.

**III.   Plaintiff's Claims Are Barred by Laches.**

Plaintiff's Response makes two arguments as to why laches should not bar its claims, asserting that: (1) the doctrine does not bar challenges to election issues because they persist

---

[5] The Court may take judicial notice of the Pima County Election Plan because it is a government publication. *See McGhee v. City of Flagstaff*, No. CV-20-08081-PCT-GMS, 2020 WL 2309881, at *2 (D. Ariz. May 8, 2020) ("Because government publications are matters of public record and can easily be verified, they are proper subjects of judicial notice."); *see also Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 978 n.2 (9th Cir. 2007) (government publications proper subject of judicial notice).

8

for multiple election cycles; and (2) the timing of this lawsuit does not prejudice Recorder Rodriguez. (Doc. 31 at 4-5). But Plaintiff miscomprehends the nature of a laches defense and dramatically understates the prejudice to Recorder Rodriguez.

Recorder Rodriguez has never argued that Plaintiff's claims are barred by laches because the root of its grievance persisted for multiple election cycles. Instead, Plaintiff's delay in bringing this lawsuit was unreasonable because Plaintiff waited until *three weeks before the election* after knowing the basis of its claims for *more than two years*. (*See* Doc. 1 at ¶ 2) (claiming plaintiff has advocated for "reinstatement" of the on-reservation early-voting site since it was removed in 2018). Had Plaintiff brought its claims earlier, laches may not have applied. But now, with Recorder Rodriguez's Election Plan already in place and voting already underway, Plaintiff's delay is highly prejudicial. *See Ariz. Libertarian Party v. Reagan*, 189 F. Supp. 3d 920, 923 (D. Ariz. 2016) (prejudice inquiry focuses on "prejudice that stems from the plaintiff's delay in bringing suit").

Indeed, the prejudice to Recorder Rodriguez is very similar to the prejudice in *Fulani v. Hogsett*, where the Seventh Circuit granted the defendant's motion to dismiss on laches grounds because the plaintiff did not file suit until three weeks before election. *See* 917 F. 2d 1028, 1031 (7th Cir. 1990). And Plaintiff's delay in bringing this lawsuit is even more unreasonable: in *Fulani*, the plaintiffs had knowledge of the facts underlying their claims for a mere eleven weeks, whereas the Plaintiff here has had knowledge of the same for more than two years. *See id.*; *see also Harris v. Purcell*, 973 P.2d 1166, 1170-71 (Ariz. 1998) (granting motion to dismiss on laches grounds where plaintiff waited five weeks to bring claim). Accordingly, the Court should dismiss Plaintiff's claims due to laches.

**IV.     Plaintiff Fails to State a Claim Under § 2 of the Voting Rights Act.**

Plaintiff fails to state a claim under § 2 because, even assuming arguendo that it has standing to bring the claim on its Tribal Members' behalf, the Complaint does not allege facts sufficient to establish a disparate burden on the rights of those members. Plaintiff must satisfy the two-step test set forth in *Democratic National Committee v. Hobbs*, and failure at step one of the test is fatal. *See* 948 F.3d 989, 1012 (9th Cir. 2020). To make the requisite

1    showing at step one, Plaintiff must plead facts showing "proof of 'causal connection
2    between the challenged voting practice and a prohibited discriminatory result" relating to
3    voting. *Gonzalez v. Arizona*, 677 F.3d 383, 405 (9th Cir. 2012) (quoting *Smith v. Salt River
4    Project Agric. Improvement & Power Dist.*, 109 F.3d 586, 595 (9th Cir. 1997)). A "bare
5    statistical showing" of disparate burden is insufficient to satisfy this step. *Id.* Courts only
6    analyze the Senate Factors, such as historical discrimination, if they reach step two.
7    *Democratic Nat'l Comm.*, 948 F.3d at 1012-13.

8          Here, the Complaint fails to satisfy step one of the § 2 test because it has not plead
9    any facts alleging that removal of the OREV site in 2018 has actually caused any
10   discriminatory result regarding the ability of Tribal Members to cast a ballot and elect
11   representatives of their choice. Plaintiff argues that the Complaint satisfies step one because
12   removing the OREV site "greatly diminishes the opportunity" for Tribal Members to
13   participate in the electoral process and "lessens" their opportunity to "vote safely." (Doc. 1
14   at ¶¶ 1, 90, 91; Doc. 31 at 6). But those allegations are nothing more than "threadbare
15   recitals of the elements of" a § 2 claim, which are insufficient to satisfy the Rule 8 pleading
16   standard. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

17         Moreover, the only statistical disparities that Plaintiff does allege to support its § 2
18   claim—such as the comparative lack of access to a vehicle and the need to travel farther to
19   vote early and in-person—are not the type of disparities that can give rise to such a claim.
20   *See, e.g.*, *Lee* 843 F.3d at 600 (4th Cir. 2016); *Yazzie*, 2020 WL 5834757, at *4. What
21   matters for the § 2 claim is whether the removal of the OREV site in 2018 has actually
22   caused any prohibited discriminatory result relating to actual voting by Tribal Members—
23   and the Complaint does not contain *any* factual allegations on this critical point. *See
24   Gonzalez*, 677 F.3d at 405.

25         Because Plaintiff fails to satisfy step one of the § 2 analysis, the facts alleged in the
26   Complaint that relate to historical discrimination do not help its cause; evidence of historical
27   discrimination only applies at step two. *See Democratic Nat'l Comm.*, 948 F.3d at 1012.
28   Thus, the Court should dismiss Plaintiff's claim under § 2 of the Voting Rights Act.

### V. **Plaintiff Fails to State an Undue Burden Claim.**

Plaintiff fails to state an undue burden claim because it fails to plead facts alleging any constitutionally cognizable burden whatsoever. "[A]bsent any burden, there is no reason to call on the state to justify its practice" in an *Anderson-Burdick* analysis. *Ariz. Libertarian Party v. Reagan*, 798 F.3d 723, 732 n.12 (9th Cir. 2015).[6]

The Complaint alleges that removal of the OREV site is an undue burden on Tribal Members' right to vote because it makes in-person early voting inconvenient in various ways (e.g., longer travel time, need to use public transit). (Doc. 1 at ¶¶ 56-62; Doc. 31 at 7) But Recorder Rodriguez's decision to not provide the OREV does not amount to *any* burden on the right to vote. As stated above, Ariz. Rev. Stat. § 16-542(A) is a statute that expands the franchise, making it easier for some voters to cast their ballots. Laws that "make[] it *easier* for others to vote does not abridge any person's right to vote" under the Constitution. *Hughs*, 2020 WL 6023310, at *5 (quotations omitted). Therefore, mere voter inconvenience with respect to early voting does not constitute a burden on any individual's right to vote. *See id.* Absent a burden, "there is no reason to call on" Recorder Rodriguez to "justify [her] practice," and Plaintiff's undue burden claim fails.

### **Conclusion**

Plaintiff lacks standing and its dilatory claims are barred by laches and *Purcell*. Even if the Court reaches the merits, Plaintiff has failed to plead facts sufficient to allege a § 2 claim or an undue burden claim under the First and Fourteenth Amendments. Accordingly, Recorder Rodriguez respectfully requests that the Court dismiss all Plaintiff's claims and enter judgment in her favor.

---

[6] Plaintiff claims that footnote 12 of *Reagan* is no longer good law because it relies on *Libertarian Party of Wash. v. Munro*, 31 F.3d 759 (9th Cir. 1994). (Doc. 27 at 25). Not so. In fact, footnote 12 recognized the tension between *Munro* and the *Anderson-Burdick* analysis, but found that both *Munro* and an *Anderson-Burdick* analysis would lead to the same result. *Reagan*, 798 F.3d at 732 n.12.

Dated this 18th day of October, 2020.

                        SNELL & WILMER L.L.P.

                        By: s/ *Eric H. Spencer*
                            Eric H. Spencer
                            Brett W. Johnson
                            Colin P. Ahler
                            Ryan J. Regula
                            Derek C. Flint
                            *Attorneys for Defendant F. Ann Rodriguez*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 18, 2020 I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants on record in this matter.

*s/ Nicole Begazo*